[No. F007762. Fifth Dist. Dec. 15, 1987.]

E. GOTTSCHALK & CO. Plaintiff and Respondent, v.
COUNTY OF MERCED et al., Defendants and Appellants.

1380

**COUNSEL**

William E. Gnass, County Counsel, and Richard C. Burton, Deputy County Counsel, for Defendants and Appellants.

Thomas, Snell, Jamison, Russell & Asperger and E. Robert Wright for Plaintiff and Respondent.

**OPINION**

**BALLANTYNE, J.**—In December of 1980 E. Gottschalk & Co., Inc., plaintiff, petitioner and respondent, entered into a shopping center lease for certain property located in Merced. The lease was for a 30-year term with 2 successive 10-year options to renew. The lessors and owners of the property were the Kolligians. A large building was constructed on the property. Gottschalk opened a department store on the premises and began doing

business in 1984. In 1984 the county assessor reappraised the value of the land from $41,770 to $346,000.[1]

Gottschalk challenged the appraisal. The appeal was denied by the assessor. Because Merced County's Assessment Appeals Board does not hear appeals based on legal contentions only, it was stipulated that Gottschalk had exhausted its administrative remedies and they filed a complaint and petition for writ of mandate against the County of Merced in superior court. The court held that Revenue and Taxation Code section 61 was unconstitutional as being in conflict with the provisions of the California Constitution, article XIIIA, section 2. The county appeals.

## I.

"On June 6, 1978, the voters of the State of California adopted the initiative measure, popularly known as Proposition 13 of the Tax Limitation Initiative, which amended the California Constitution by adding article XIII A." (*Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1177 [224 Cal.Rptr. 285].) Prior to Proposition 13, real property was appraised for taxation purposes every year. (*Id.* at p. 1179.)

Article XIIIA, section 1, provides: "(a) The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties.

"(b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on (1) any indebtedness approved by the voters prior to July 1, 1978, or (2) any bonded indebtedness for the acquisition or improvement of real property approved on or after July 1, 1978, by two-thirds of the votes cast by the voters voting on the proposition." Section 2, subdivision (a), provides: "The full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, *or a change in ownership* has occurred after the 1975 assessment. All real property not already assessed up to the 1975-76 full cash value may be reassessed to reflect that valuation. For purposes of this section, the term 'newly constructed' does not include real property which is reconstructed after a disaster, as declared by the Governor, where the fair market value of

---

[1]The county also appraised the value of the newly constructed building. Gottschalk did not challenge this aspect of the appraisal.

such real property, as reconstructed, is comparable to its fair market value prior to the disaster. Also, the term 'newly constructed' shall not include the portion of reconstruction or improvement to a structure, constructed of unreinforced masonry bearing wall construction, necessary to comply with any local ordinance relating to seismic safety during the first 15 years following that reconstruction or improvement." (Italics added.) Subsequent to this the Legislature adopted Revenue and Taxation Code section 61, which provides in pertinent part:

"Except as otherwise provided in Section 62, change in ownership, as defined in Section 60, includes, but is not limited to: . . . [¶] (c)(1) The creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options), the termination of a leasehold interest in taxable real property which had an original term of 35 years or more (including renewal options), and any transfer of a leasehold interest having a remaining term of 35 years or more (including renewal options); or (2) any transfer of a lessor's interest in taxable real property subject to a lease with a remaining term (including renewal options) of less than 35 years.

"Only that portion of a property subject to such lease or transfer shall be considered to have undergone a change of ownership."

The county assessed the tax under Revenue and Taxation Code section 61 asserting that the lease entered into by Gottschalk resulted in a change of ownership. ██ Gottschalk contends that Revenue and Taxation Code section 61 is unconstitutional because a change in ownership does not occur in a lease regardless of the length of the lease.

The instant action presents a pure question of law. ██ This court is guided by the following concepts when construing statutes within the context of a provision of the Constitution.

" ' "[W]here a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the Legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling. . . . and the courts shall not and must not annul, as contrary to the constitution, a statute passed by the Legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution." ' " (*Schoderbek* v. *Carlson* (1984) 152 Cal.App.3d 1027, 1035 [199 Cal.Rptr. 874].)

██ "It is blackletter law that the Constitution and statutes must receive practical, common sense construction [citation] and that an interpretation

which would lead to an unreasonable result or absurdity must be avoided." (*Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda, supra,* 178 Cal.App.3d 1174, 1181-1182.) ■ "It is, of course, well settled that in case of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer." (*Id.* at p. 1182.)

"Generally the Legislature is supreme in the field of taxation, and the provisions on taxation in the state Constitution are a limitation on the power of the Legislature rather than a grant to it. [Citations.] Its power in the field of taxation is limited only by constitutional restrictions. [Citations.] Those principles are a part of the broader concept that '. . . Our Constitution is not a grant of power but rather a limitation or restriction upon the powers of the Legislature. . . .' [Citation.] As a result constitutional restrictions on the power of the Legislature must be strictly construed against the limitation. [Citations.] We said in *Collins* v. *Riley, supra,* [24 Cal.2d 912, 152 P.2d 169] at 910 [916]: [¶] 'If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations are to be construed strictly, and are not to be extended to include matters not covered by the language used.' That rule is a corollary of the strong presumption of the constitutionality of an act of the Legislature." (*Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 568-569 [154 P.2d 674].)

■ Bearing in mind all of the above, this initiative and the construction given it is governed by the following rule: "It is a fundamental precept of our law that, although the legislative power under our constitutional framework is firmly vested in the Legislature, 'the people reserve to themselves the powers of initiative and referendum.' (Cal. Const., art. IV, § 1.) It follows from this that ' " '[t]he power of initiative must be liberally construed . . . to promote the democratic process.' " ' [Citations.] Courts will therefore interpret a measure adopted by a vote of the people in such a manner as to give effect to the intent of the electorate. [Citation.]

" ' " "The words must be read in a sense which harmonizes with the subject-matter and the general purpose and object of the amendment, consistent of course with the language itself. The words must be understood, not as the words of the civil service commission, or the city council, or the mayor, or the city attorney, but as the words of the voters who adopted the amendment. They are to be understood in the common popular way, and, in the absence of some strong and convincing reason to the contrary, not found here, they are not entitled to be considered in a technical sense inconsistent with their popular meaning.' " [Citation.]' " (*Arvin Union School Dist.* v. *Ross* (1985) 176 Cal.App.3d 189, 198 [221 Cal.Rptr. 720].)

Article XIII, section 33, empowers the Legislature to pass laws regarding the taxation of property.

". . . [A]bsent some constitutional limitation on the taxation power of the Legislature, its power to tax is supreme. [Citations.] Article II, section 8 of the California Constitution, however, reserves to the people the power of the initiative, defined as the power 'to propose statutes and amendments to the Constitution' without limitation. Our state Constitution clearly indicates that the power of the initiative is the separate and distinct power of the people to legislate: 'The legislative power of this State is vested in the California Legislature . . ., but the people reserve to themselves the power of intiative and referendum.' [Citations.] This reservation of power by the people is, in the sense that it gives them the final legislative word, a limitation upon the power of the Legislature." (*Carlson* v. *Cory* (1983) 139 Cal.App.3d 724, 728 [189 Cal.Rptr. 185].)

Thus, the Legislature cannot implement statutes which limit or expand the commonsense meaning of a term which is part of the Constitution as a result of the people's power to legislate by a voter-passed initiative.

 The county asserts that there is no established definition of the term "change of ownership." It argues that the Legislature was empowered and obligated to define the term and that Revenue and Taxation Code section 61, subdivision (c), was a proper exercise of that power. The county contends that the Legislature is supreme in the field of taxation and is limited in that power only by the Constitution. Since their definition is reasonable and not in direct conflict with the constitutional provisions, it is neither unreasonable nor arbitrary and must be upheld.

In *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281], various governmental agencies and concerned citizens petitioned the Supreme Court to resolve multiple constitutional issues regarding the validity of California Constitution, article XIIIA. The Supreme Court found the enactment to be constitutional, surviving each of the substantial challenges made regarding it. As part of its discussion, the court noted that the Legislature has already implemented legislation defining several of the undefined terms, including "change of ownership." (*Id.* at p. 247.) Although the court noted that these were good-faith efforts, it stated that the new provisions "remain subject to judicial challenge in subsequent cases on the basis that they may incorrectly manifest the intent of article XIII A." (*Ibid.*)

We find that the phrase "change of ownership" is not so certain and clear that it requires no construction. It is an undefined term: "Both technically

and in its common currency the word 'ownership' is a term of contextual variability, and must be interpreted and understood in light of the purposes, goals, and design of the enactment in which it appears. (*Pacific Coast etc. Bank of San Francisco* v. *Roberts* (1940) 16 Cal. 2d 800, 806; 2 Ops. Cal. Atty. Gen. 310, 312 (1943); 1 Ops. Cal. Atty. Gen. 193, 195 (1943).) In applying any such generic term or general pronouncement to the almost limitless variety of particular human experiences, we are called upon to implement not our own will but that of the collective body whose province is to ordain them. . . .

"In common parlance the term 'ownership' generally connotes the right of possession and use to the exclusion of others, as distinguished from technical aspects of title. (*Cf.* 1 Ops.Cal.Atty.Gen. 193, *supra.*) This basic concept of ownership is consistent with the purposes, goals, and design of article XIIIA, which is primarily a tax relief measure. . . ." (63 Ops. Cal. Atty. Gen. 304, 312 (1980).)

Since we find that the phrase "change of ownership" requires construction, we must determine whether the Legislature's interpretation of the term is a reasonable one. Revenue and Taxation Code section 60 defines change of ownership in the broad sense as "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." Revenue and Taxation Code section 61 sets forth specific instances of a change in ownership as defined in section 60 and includes subdivision (c)(1), the specific provision challenged in this appeal.

In *Parkmerced Co.* v. *City and County of San Francisco* (1983) 149 Cal.App.3d 1091 [197 Cal.Rptr. 401], the court found that the definition contained in Revenue and Taxation Code section 60 reasonably and properly comports "with Article XIII A's intended meaning." (*Id.* at p. 1095; see also *Allen* v. *Sutter County Bd. of Equalization* (1983) 139 Cal.App.3d 887, 892 [189 Cal.Rptr. 101].) We agree.

Many long-term leases do amount to a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest. If we were to hold that long-term leases do not amount to a change of ownership and are not subject to property tax reappraisal, a large loophole would be created allowing in effect a transfer of ownership without reappraisal because the fee was not technically transferred. We do not believe that this was the intent of the voters when the initiative was passed.

We also find that the term of 35 years chosen by the Legislature is not an arbitrary or unreasonable figure. "Thirty-five years was felt to be the length

of term generally required for lease financing by institutional lenders and, therefore, approximately equivalent to the fee . . . ." (Pope & Ajalat, *Proposition 13 Section 2(a): Base years, changes of ownership and new construction* (1979) 54 State Bar J. 494, 498.)

The term "change of ownership" is not so clear and concise that it is not subject to further construction. Revenue and Taxation Code sections 60 and 61, subdivision (c)(1), are reasonable interpretations of this term. These sections are not unconstitutional.

Although Gottschalk asserts that their lease is not substantially equivalent to the value of the fee, their attack is directed in the general sense that the character of any leasehold interest is not the equivalent of a fee. We give great deference to the Legislature's determination that a lease of 35 years is substantially equivalent to the value of the fee. Gottschalk presented nothing below nor on appeal to convince us that the 35-year term is arbitrary or to prove that a 35-year lease is not substantially equivalent to a fee ownership. Total equality is not necessary and minor constraints on the lessee during the term of the lease do little to lessen the value received by the lessee. There was no competent evidence shown by Gottschalk proving that the Kolligians retained a valuable remainder and that their lease was not substantially equivalent to the value of the fee.

## II.

■■ Gottschalk asserts that if we uphold the constitutionality of Revenue and Taxation Code section 61, subdivision (c)(1), then reappraisal would still be prohibited because: (1) Gottschalk leased the building and not the land underneath the building, and (2) the lease cannot be construed as a lease for 35 years because the options have not been exercised.

We reject these contentions. The right to use and occupy the land is inherent in a lease of a structure upon the land. (*Bachenheimer* v. *Palm Springs etc. Corp.* (1953) 116 Cal.App.2d 580, 588 [254 P.2d 153].) As to Gottschalk's second assertion, Revenue and Taxation Code section 61, subdivision (c), specifically includes option periods within the 35-year computation. To find otherwise would again open up a large loophole in the tax system allowing one to avoid reappraisal by merely tacking on numerous option renewals on a lease of less than 35 years. If this were allowed, owners of commercial property could effectively avoid reappraisal and place a greater tax burden on the owners of residential property. This was surely not the intent behind Proposition 13. Furthermore, Gottschalk failed to raise this issue below and therefore cannot argue it on appeal.

The judgment is reversed. Costs are awarded to appellant.

Best, Acting P. J., and Thaxter, J.,* concurred.

* Assigned by the Chairperson of the Judicial Council.