[No. B033602. Second Dist., Div. Four. May 19, 1989.]

THRIFTY CORPORATION, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

De Witt W. Clinton, County Counsel, and Philip H. Hickok, Deputy County Counsel, for Defendants and Appellants.

Sheppard, Mullin, Richter & Hampton, Robert Joe Hull and James J. Carroll III for Plaintiff and Respondent.

## OPINION

**McCLOSKY, J.**—Defendants County of Los Angeles (County) and City of Torrance (City) appeal from the summary judgment entered against them and in favor of plaintiff Thrifty Corporation.

Thrifty filed this action for refund of documentary transfer tax and for declaratory relief due to defendants' insistence that it pay $2,621.85 as a documentary transfer tax growing out of Thrifty having leased a parcel of real property for 20 years with an option to renew for an additional 10 years. In granting Thrifty's motion for summary judgment, the trial court ruled that "a documentary transfer tax under Section 11911 of the California Revenue and Taxation Code may not validly be applied to the recordation of leases or leasehold interests." This appeal follows.

 The sole issue presented by this appeal is when, if ever, can a leasehold interest in real property constitute "realty sold" for purposes of triggering taxation under Revenue and Taxation Code section 11911 (section 11911). Section 11911 provides in pertinent part:

"The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at the rate of fifty-five cents ($0.55) for each five hundred dollars ($500) or fractional part thereof."

In 1984, the County amended its regulations enacted pursuant to section 11911 and began taxing leases. The City of Torrance did likewise.

As we now explain, while leases are generally not taxable under section 11911 a lease which is of sufficient longevity to approximate a transfer in fee

does warrant taxation. The conclusion that a lease generally does not constitute "realty sold" as that term is used in section 11911 follows from an examination of the legislative history of that section. An early incarnation of the bill that was eventually enacted as section 11911 expressly made taxable "transfers of lands and other realty . . . ." While this phrase was broad enough to encompass all leaseholds, the bill specifically limited its application to "lease[s] . . . under which possession is given to the purchaser . . . while title is retained by the vendor as security for payment of the purchase price." Thus, in this early version of the bill, the Legislature expressly dealt with which leases were taxable and which were not.

■ In the version of the bill that ultimately was enacted as section 11911, however, the Legislature employed the more restrictive phrase "realty sold" rather than "transfers of land" and deleted any express reference to which leases were taxable. We conclude that the Legislature, by enacting this more restrictive terminology, intended to generally place leases outside of the scope of section 11911. (See *Madrid* v. *Justice Court* (1975) 52 Cal.App.3d 819, 825 [125 Cal.Rptr. 348] [" 'The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision.' "] quoting *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512].)

This does not mean, however, that no leases are taxable under section 11911. ■ Section 11911 was enacted effective January 1, 1969, to replace and was patterned after the Federal Stamp Act on conveyances which expired on that same date. (Former 26 U.S.C. §§ 4361, 4363; see *Taxes Replace Taxes* (1968) 43 L.A. Bar Bull. 121.) Because section 11911 was patterned after the former federal act and employs virtually identical language as that act, we must infer that the Legislature intended to perpetuate the federal administrative interpretations of that federal act. (See *Estate of Morse* (1970) 9 Cal.App.3d 411, 415 [88 Cal.Rptr. 52]; 51 Ops.Cal.Atty.Gen. 50, 57 (1968) ["it is reasonable to assume that the Legislature intended that the established federal construction of the language used [in the federal stamp act] be continued."]; 62 Ops.Cal.Atty.Gen. 87, 90 [by reference to former federal regulations the Attorney General by written opinion concluded that the transfer of an easement is taxable under section 11911].)

■ Pursuant to the regulations interpreting the former federal act, "[o]rdinary leases of real property for a definite term of years" were generally not subject to a transfer tax. (Former 26 C.F.R. § 47.4361-2(b)(8).) Excepted from this general rule, however, were leases "enduring for a fixed period of years but which, either by reason of the length of the term or the grant of a right to extend the term by renewal or otherwise, consist of a

bundle of rights approximating" ["interests in real property which endure for a period of time, the termination of which is not fixed or ascertained by a specific number of years, . . . [Former 26 C.F.R. § 47.4361-1(a)(4)(i)(a).].]" (26 C.F.R. § 47.4361-1(a)(4)(i)(b).) Accordingly, under former federal law a lease was subject to a transfer tax when it was of sufficient duration to approximate an interest such as an estate in fee simple or a life estate. As explained in a former treasury regulation " 'for example, a lease of real estate for 999 years, or a lease for 99 years renewable forever or for several succeeding terms is taxable. On the other hand, a lease for five years is not taxable even if the right is granted to renew it for several successive terms.' " (*Chevron Oil Company* v. *United States* (1973) 471 F.2d 1373 1379 [200 Ct.Cl. 449]; accord 62 Ops.Cal.Atty.Gen. 87, 90 [Under the former federal act "interests for a term of years [was classified] as 'realty' when such interests approximate an 'ownership' right rather than a mere 'temporary right of possession.' "].)

In the present case the issue boils down to whether as a matter of law Thrifty's 20-year lease with an option to renew for 10 years is of sufficient longevity under California law to approximate an " 'ownership' right rather than a mere 'temporary right of possession.' " (*Ibid.*) The Legislature has provided us with guidance in making this determination. Revenue and Taxation Code section 61, subdivision (c)(1) (section 61) defines "change in ownership" for property tax purposes in part as "[t]he creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options), . . ."

In *E. Gottschalk & Co., Inc.* v. *County of Merced* (1987) 196 Cal.App.3d 1378 [242 Cal.Rptr. 526], the Court of Appeal concluded that this provision of section 61 did not violate California Constitution, article XIII A, section 2 (Proposition 13), which restricts when the valuation of property may occur to among other things "change in ownership." In upholding the validity of section 61 the *Gottschalk* court explained:

"Many long-term leases do amount to a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest. If we were to hold that long-term leases do not amount to a change of ownership and are not subject to property tax reappraisal, a large loophole would be created allowing in effect a transfer of ownership without reappraisal because the fee was not technically transferred. We do not believe that this was the intent of the voters when the initiative was passed.

"We also find that the term of 35 years chosen by the Legislature is not an arbitrary or unreasonable figure. 'Thirty-five years was felt to be the length of term generally required for lease financing by institutional lenders

and, therefore, approximately equivalent to the fee . . . .' [Citation.]" (196 Cal.App.3d at pp. 1385-1386.)

■ While the Document Transfer Tax Act does not define "realty sold" that phrase is sufficiently similar to the phrase "change in ownership" contained in the same code and governing an analogous subject, to warrant that each phrase be defined to have the same meaning. ■ As we explained in *Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 356 [220 Cal.Rptr. 602]: "Where the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise."

■ We disagree with defendants' assertion that it is a question of fact whether a lease of a shorter duration then that specified in section 61 approximates an interest in fee. The determination of what the Legislature intended when it employed the term "realty sold" in section 11911 is a question of law. Since we conclude that the Legislature intended that term to be defined consistently with the phrase "change of ownership" in section 61, as a matter of law Thrifty's 20-year lease with an option to renew for 10 years was not of sufficient longevity to constitute "realty sold" under section 11911.

The judgment is affirmed. Plaintiff shall recover costs on appeal.

Woods (A. M.), P. J., and Goertzen, J., concurred.

A petition for a rehearing was denied June 7, 1989, and respondent's petition for review by the Supreme Court was denied August 10, 1989.