Opinion
 

 KLINE, P. J.
 

 The Board of Supervisors of Mendocino County appeals from a judgment requiring it to refund a documentary transfer tax paid by McDonald’s Corporation in connection with the extension of a long-term lease. The question on appeal is whether the trial court correctly determined the lease was not of sufficient duration to be subject to the tax.
 

 Statement of the Case and Facts
 

 On March 30, 1972, McDonald’s Corporation (McDonald’s) entered into a lease for property in Ukiah for a term of twenty-one years, expiring on June 1, 1993, with three renewal options of five years each. In 1992, it exercised its option to renew for the five-year term from 1993 through 1998.
 

 On February 1, 1995, McDonald’s and the lessor entered into a “Memorandum of Amended Lease” extending the term of the lease to June 1, 2013, with two renewal options of five years each. When this amended lease was recorded, the Mendocino County Clerk-Recorder imposed a transfer tax of $990 under the authority of Revenue and Taxation Code section 11911, viewing the amended lease as creating a leasehold interest of over 35 years. McDonald’s paid the tax and informally appealed its imposition; this appeal was denied. By letter of January 18, 1996, McDonald’s filed a claim for refund of transfer tax; the claim was rejected by letter dated February 16, 1996.
 

 On July 17, 1996, McDonald’s filed a complaint for refund of documentary transfer taxes against the Mendocino County Board of Supervisors (the County). The matter was heard on June 27, 1997. The trial court’s tentative decision in favor of McDonald’s was filed on June 30, 1997. The County filed objections to the court’s conclusion that since the original lease did not give McDonald’s a right to possession during the period of the amended lease, the amended lease period should not be related back to the original lease in calculating the 35-year time period required for imposition of the tax. The County urged the court should have considered McDonald’s as having had continuous possession of the leased premises for 51 years, the
 
 *615
 
 total term of the original and amended leases. On August 13, 1997, the court filed a ruling on these objections, finding critical the “break in the right of occupancy” resulting from the fact the lessor had no obligation to enter into the amended lease extending the term. The court’s statement of decision was filed on August 13, 1997, and judgment was filed on August 26, 1997.
 

 The County filed a timely notice of appeal on September 30, 1997.
 

 Discussion
 

 I.
 

 Revenue and Taxation Code section 11911
 
 [1]
 
 authorizes the imposition of documentary transfer taxes as follows: “(a) The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements,
 
 or other realty sold
 
 within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at the rate of fifty-five cents ($0.55) for each five hundred dollars ($500) or fractional part thereof.” (Italics added.)
 

 Thrifty Corp.
 
 v.
 
 County of Los Angeles
 
 (1989) 210 Cal.App.3d 881 [258 Cal.Rptr. 585] held that the phrase “realty sold” used in section 11911 includes leaseholds of 35 years or more, including renewal options.
 
 Thrifty
 
 explained that while leases are generally outside the scope of section 11911, leases “of sufficient longevity ... to approximate an ‘ “ownership” right rather than a mere “temporary right of possession” ’ ” are within its reach. (210 Cal.App.3d at p. 885.) In determining the appropriate measure of longevity,
 
 Thrifty
 
 adopted the definition set forth in section 61, subdivision (c)(1), of “change in ownership” for property tax purposes, “[t]he creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options) . . . .”
 
 (Ibid.)
 
 This definition had been upheld against constitutional challenge in
 
 E. Gottschalk & Co.
 
 v.
 
 County of Merced
 
 (1987) 196 Cal.App.3d 1378 [242 Cal.Rptr. 526], which noted that the 35-year term selected by the Legislature “ ‘ “was felt to be the length of term generally required for lease financing by institutional lenders and, therefore, approximately equivalent to the fee . . . .” [Citation.]’ ”
 
 (Thrifty, supra,
 
 210 Cal.App.3d at pp. 885-886, quoting
 
 E. Gottschalk & Co., supra,
 
 196
 
 *616
 
 Cal.App.3d at pp. 1375-186.)
 
 Thrifty
 
 held that the phrase “realty sold,” left undefined in the Document Transfer Tax Act was “sufficiently similar to the phrase ‘change in ownership’ contained in the same code and governing an analogous subject, to warrant that each phrase be defined to have the same meaning.” (210 Cal.App.3d at p. 886.)
 

 In
 
 Thrifty,
 
 the lease in question was for 20 years, with an option to renew for an additional 10 years. This lease was held to be of insufficient longevity to be subject to taxation. In
 
 Gottschalk,
 
 entry of a 30-year lease with 2 successive 10-year options to renew was held to be a “change in ownership” triggering reappraisal of the property. In the present case, the original lease was for a total term of 36 years (including renewal options). At the time the extension was entered in 1995, the remaining term of the lease was 28 years (13 under the original lease and 15 under the amendment). The question before us is how the 35-year period should be calculated for purposes of the documentary transfer tax when an existing lease is amended: If only the prospectively available term of the lease is included, as the trial court found, McDonald’s lease would not be subject to the tax; if the entire length of the lease, past and present, is included, as the County contends, the tax would apply.
 

 No cases of which we are aware have considered this issue. Regulations of the Board of Equalization (Board), however, appear to support the trial court’s conclusion. The Board’s regulations list as a “change in ownership” the “transfer, sublease, or assignment of a leasehold interest with a
 
 remaining
 
 term of 35 years or more.” (Cal. Code Regs., tit. 18, § 462.100, subd. (a)(1)(B), italics added.) Similarly, the regulations list as a transfer of a lessee’s interest that does
 
 not
 
 constitute a change in ownership a “transfer, sublease, or assignment of a leasehold interest with a
 
 remaining
 
 term of less than 35 years
 
 (regardless of the original term of the lease.)”
 
 (Cal. Code Regs., tit. 18, § 462.100, subd. (b)(1)(B), italics added.)
 

 An opinion letter from the Board considers the “change in ownership” concept governing reappraisal of property for tax purposes as applied to an example relevant to the facts of the present case: An original lease for a term of 40 years is amended after 6 years (i.e., with 34 years remaining) to extend the term an additional 10 years (for a total remaining term of 44 years). In this situation, according to the Board, because the lessee at the time of the amendment held a term of less than 35 years, the lessor is considered the primary owner of the leasehold at that time and the extension or entry into a new lease constitutes a change in ownership if the new lease term is 35 years or more. While this administrative opinion is not binding on this court, the Board’s administrative construction of tax assessment statutes is entitled to
 
 *617
 
 great weight.
 
 (Carlson
 
 v.
 
 Assessment Appeals Bd. I
 
 (1985) 167 Cal.App.3d 1004, 1013 [213 Cal.Rptr. 555].) The Board’s opinion, as well as its regulations, demonstrate that the theory of the 35-year rule “is that the holder of a leasehold interest with a term of 35 years or more is treated as the owner. As the term of the lease reduces to less than 35 years, however, ownership is considered to revert to the lessor without the property undergoing a second change of ownership.” (1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1997) § 2:16, pp. 2-42 to 2-43.) This interpretation is consistent with the analyses of legislative intent in
 
 Thrifty
 
 and
 
 Gottschalk.
 

 The County urges, in essence, that the entire period of McDonald’s leasehold should be considered because the 1995 amendment merely extended the original lease rather than constituting a renewal of an expired lease (and therefore a new tenancy), and because there was never a break in McDonald’s possession of the leased premises. Under the County’s theory, however, if the amendment merely extended the original lease, there would have been no “transfer” to trigger imposition of the documentary transfer tax. In any event, the trial court’s conclusion was consistent with the above analysis, under which at the time of the amendment McDonald’s was not considered the “owner” of the property for tax purposes because the remaining term of the lease was less than 35 years. Moreover, to the extent there is any doubt whether the expired portion of a leasehold should be considered in determining whether a lease extension is subject to a documentary transfer tax, “ ‘[i]t is, of course, well settled that in case of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer.’ ”
 
 (Larson
 
 v.
 
 Duca
 
 (1989) 213 Cal.App.3d 324, 329 [261 Cal.Rptr. 559], quoting
 
 Dreyer’s Grand Ice Cream, Inc.
 
 v.
 
 County of Alameda
 
 (1986) 178 Cal.App.3d 1174, 1182 [224 Cal.Rptr. 285];
 
 E. Gottschalk & Co.
 
 v.
 
 County of Merced, supra,
 
 196 Cal.App.3d at p. 1382; see
 
 Edison California Stores
 
 v.
 
 McColgan
 
 (1947) 30 Cal.2d 472, 476 [183 P.2d 16].)
 

 In 1995, when the lease amendment was executed and recorded, some 13 years remained under the original lease. Accordingly, at that point in time, McDonald’s was not considered the “owner” of the property, despite the fact that it had previously been the lessee of that property for over 22 years. (See Cal. Code Regs., tit. 18, § 462.100, subd. (a)(1)(B).) Adding the remaining 13 years of the original lease and the 15 years added by the extension, McDonald’s leasehold at the time of the amendment was for 28 years. As this period is less than 35 years, the trial court correctly determined the documentary transfer tax should not have been imposed.
 

 II.
 

 For the first time on appeal, the County urges the imposition of the documentary transfer tax in 1995 was “in effect a recapture of an escaped
 
 *618
 
 tax.” The County reasons that no transfer tax was imposed upon recordation of the original lease in 1972 because the law did not then recognize application of the transfer tax to 35-year leases; the applicability of the tax to such leases was recognized in 1989, with the decision in
 
 Thrifty Corp.
 
 v.
 
 County of Los Angeles, supra,
 
 210 Cal.App.3d 881; the tax was not imposed in 1989 because “the task of reviewing voluminous recorded documents to determine which might qualify for the tax was simply too onerous and time consuming;” and the County was therefore entitled to assess the tax when the lease came to its attention in 1995.
 

 Under familiar general rules, theories not raised in the trial court may not be raised for the first time on appeal.
 
 (North Coast Business Park
 
 v.
 
 Nielsen Construction Co.
 
 (1993) 17 Cal.App.4th 22, 28-29 [21 Cal.Rptr.2d 104];
 
 Richmond
 
 v.
 
 Dart Industries, Inc.
 
 (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].) The County relies on an exception to this rule providing that a question of law on undisputed facts may be raised for the first time on appeal.
 
 (Ward
 
 v.
 
 Taggart
 
 (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) As will be seen, the issue now raised does not fall within this exception.
 

 “Escape assessments are retroactive assessments, levied in a later year, and are intended to rectify omissions or errors in the original assessment of taxable property.” (1 Ehrman & Flavin, Taxing Cal. Property,
 
 supra,
 
 § 14:01, p. 14-1; see
 
 Montgomery Ward & Co.
 
 v.
 
 County of Santa Clara
 
 (1996) 47 Cal.App.4th 1122 [55 Cal.Rptr.2d 261];
 
 Hewlett-Packard Co.
 
 v.
 
 County of Santa Clara
 
 (1975) 50 Cal.App.3d 74 [123 Cal.Rptr. 195].) The parties dispute whether the principles governing escape assessments are applicable to documentary transfer taxes. We need not resolve this question. As even the County recognizes, a four-year statute of limitations period is prescribed for escape assessments. (§ 532;
 
 Montgomery Ward & Co.
 
 v.
 
 County of Santa Clara, supra,
 
 47 Cal.App.4th at p. 1134; 1 Ehrman & Flavin, Taxing California Property,
 
 supra,
 
 § 14:01, p. 14-2.) The County urges the limitations period should be viewed as beginning to run upon its discovery of McDonald’s lease in 1995, under the doctrine of delayed discovery. (See
 
 Leaf
 
 v.
 
 City of San Mateo
 
 (1980) 104 Cal.App.3d 398, 407-408 [163 Cal.Rptr. 711].) Were this doctrine applicable, however, a factual question would be presented as to when the County could have discovered the existence of McDonald’s lease through the exercise of reasonable diligence. The existence of this factual question prevents the County from raising this theory for the first time on appeal.
 

 We note, too, that the premise of the County’s argument—that it could have imposed the transfer tax in 1989—is questionable. As indicated above, an escape assessment must be based on a tax that was in fact owed in a prior
 
 *619
 
 year. A documentary transfer tax is imposed on instruments “by which any lands, tenements,
 
 or other realty sold
 
 within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction.” (§ 11911, subd. (a), italics added.) In the present case, there was no “transfer” in 1989 to trigger imposition of the tax. As McDonald’s points out, the
 
 Thrifty
 
 decision did not create a new rule authorizing the imposition of transfer taxes on long-term leases; it interpreted legislation that was enacted in 1967. (§ 11911, added by Stats. 1967, ch. 1332, p. 3162, § 1, operative Jan. 1, 1968.) The transfer that could have justified imposition of the tax occurred in 1972, with the recording of the original lease; given the County’s assertion that the law in 1972 did not recognize the application of the transfer tax to 35-year leases, however, we must assume no county ordinance in 1972 purported to impose the tax on such leases.
 

 The judgment is affirmed.
 

 Lambden, J., and Ruvolo, J., concurred.
 

 [1]
 

 A11 further statutory references will be to the Revenue and Taxation Code.