Filed 7/10/20 (unmodified version attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 731 MARKET STREET OWNER, LLC,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant and Appellant. | A154369<br><br>(City & County of San Francisco Super. Ct. No. CGC-16-554661)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 18, 2020, be modified as follows:  On page 4, the first sentence and citation of part I of the discussion section—"The ordinance authorizes San Francisco to impose a documentary transfer tax, which is ' "the fee paid in connection with the recordation of deeds or other documents evidencing transfers of ownership of real property." ' (*Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 668.)"—are deleted and replaced with:  "The ordinance authorizes San Francisco to impose a documentary transfer tax on the conveyance of real property."

There is no change in the judgment.

Appellant's petition for rehearing is denied.


Dated:    July 10, 2020            SIGGINS, P.J.    , P. J.

1

A154369/731 Market Street Owner, LLC v. S.F.

| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Richard B. Ulmer, Jr., J. |
| Counsel: | Dennis J. Herrera, City Attorney, Scott M. Reiber, Chief Tax Attorney, Thomas S. Lakritz and Moe Jamil, Deputy City Attorneys, for Defendant and Appellant. |
| | Farella Braun + Martel and James W. Morando for Plaintiff and Respondent. |

Filed 6/18/20 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 731 MARKET STREET OWNER, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Appellant. | A154369<br><br>(City & County of San Francisco Super. Ct. No. CGC-16-553010) |

In 2009, 731 Market Street Owner, LLC (731 Market) leased the ground floor of its commercial building to Garfield Beach CVS, L.L.C. (CVS) for a term of 45 years. Once the lease was recorded with the City and County of San Francisco (San Francisco), a "Real Property Transfer Tax" was paid pursuant to section 1101 et seq. of the San Francisco Business and Tax Regulations Code (ordinance), based on the value of the stream of rental payments due over the lease's life.

In 2015, 731 Market sold the building, which included the lease with CVS. All terms of the original lease remained unchanged; CVS remained the lessee, continued to possess the ground floor unit of the building, and still had a remaining term of more than 35 years. 731 Market paid a documentary transfer tax, then unsuccessfully sought a refund of the amount of tax it paid based on the value of the remaining stream of payments due over CVS's lease.

1

The issue presented in this appeal is whether, as a matter of law, San Francisco can impose a transfer tax on an existing leasehold interest with a remaining term of over 35 years following the sale and transfer of the overall property. This question turns on whether such a transaction constitutes "realty sold" within the meaning of the ordinance. (S.F. Bus. & Tax Regs. Code, § 1102.)

Following a bench trial on 731 Market's action for a partial refund of the transfer tax amount it paid to San Francisco and for declaratory relief, the trial court concluded that the 2015 transaction did not trigger the tax as to the leasehold interest because the transaction did not result in any "realty sold" under the ordinance, and, therefore, San Francisco impermissibly collected a "double tax" on the property. San Francisco challenges that ruling on appeal. Having independently construed the ordinance, we agree with the trial court's interpretation and affirm.

## BACKGROUND

We take our factual summary from the stipulated facts at trial. In 2009, 731 Market, the owner of a commercial building, leased part of the building to CVS for 20 years, plus five successive options to extend the lease for additional five-year periods, for a total term of 45 years. When a memorandum of the lease was recorded in 2011, a transfer tax was paid under the ordinance.

In 2015, 731 Market sold and transferred the property to Jamestown Premier 731 Market, L.P. However, CVS maintained the existing lease with a remaining term of over 35 years and continued to possess the ground floor unit of the building. Thus, other than substituting the new building owner as lessor, there was no transfer of CVS's interests under the original lease. In connection with the sale, 731 Market paid San Francisco a transfer tax (S.F.

Bus. & Tax Regs. Code, § 1101 et seq.) in the amount of over $1.6 million. Part of that amount included the then-present value of 731 Market's anticipated 41-year stream of rent payments due over the lease's life.[1] 731 Market submitted a claim to San Francisco for a refund of the amount attributable to the leasehold interest. San Francisco denied the claim.

731 Market filed a complaint against San Francisco for declaratory relief and for a partial refund of the transfer tax it paid. The trial court held a bench trial based on the parties' trial briefs and stipulated statement of facts and admission of trial exhibits.

In its trial brief, 731 Market argued the transfer tax it paid in 2015 should not have included an amount attributable to the lease payments. 731 Market noted the ordinance contains language substantially identical to that in California's documentary transfer tax statute (Rev. & Tax. Code, § 11911, subd. (a)).[2] 731 Market also explained that, under the ordinance, " 'the determination of what constitutes "realty" shall be determined by the definition or scope of that term under state law.' " (S.F. Bus. & Tax Regs. Code, § 1114.) Thus, 731 Market relied on section 11911 and cases interpreting it to construe the phrase "realty sold" in the ordinance. 731 Market asserted that under those authorities, the 2015 transaction did not result in a transfer of the lease in question, which had a remaining term of over 35 years. 731 Market further explained that CVS, not the new

---

[1] Section 1115.2 of the San Francisco Business and Tax Regulations Code provides that if a tax becomes delinquent, the taxpayer must pay a penalty of 25 percent of the amount of tax due. Thus, taxpayers typically pay the full tax amount and seek a refund afterward.

[2] All further statutory references are to the Revenue and Taxation Code unless otherwise specified. We refer to California's documentary transfer tax statute as "section 11911."

3

landlord, should be treated as the primary " 'owner' " of the leasehold interest for taxation purposes because CVS's interest was "substantially equivalent to" holding an estate in fee simple. 731 Market argued there was no " 'realty sold' " as to CVS's lease and therefore no taxable event.

San Francisco disagreed with 731 Market's interpretation. It argued it could tax both the 2015 sale of 731 Market's ownership of the underlying property and the transfer of 731 Market's interests in CVS's lease to a new landlord. According to San Francisco, both of those property interests constituted " 'realty sold' " and were separately taxable under the ordinance. San Francisco also argued section 11911 and the cases interpreting it were inapplicable.

The trial court issued a statement of decision. It agreed with 731 Market's interpretation of the ordinance and concluded that because "nothing was 'sold' " as to the existing lease, "no taxable event occurred in 2015 . . . ." The court therefore declared "San Francisco is not and was not entitled to impose a documentary transfer tax on the then-current value of the anticipated income stream from the long-term CVS lease" as of the 2015 sale and "that a refund is thus due . . . for the transfer tax paid on that value . . . ." It awarded 731 Market a refund for $286,922. The court entered judgment in favor of 731 Market.

## DISCUSSION

### I.     Relevant Statutes and Standard of Review

The ordinance authorizes San Francisco to impose a documentary transfer tax, which is " 'the fee paid in connection with the recordation of deeds or other documents evidencing transfers of ownership of real property.' " (*Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 668.) The ordinance states: "There is hereby imposed on each deed, instrument or

4

writing by which any lands, tenements, or other realty sold within the City and County of San Francisco shall be granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or her or their direction, when the consideration or value of the interest or property conveyed (not excluding the value of any lien or encumbrances remaining thereon at the time of sale) (a) exceeds $100 but is less than or equal to $250,000, a tax at [specified rates]." (S.F. Bus. & Tax Regs. Code, § 1102.)

This ordinance, known as the Real Property Transfer Tax Ordinance, "is adopted pursuant to the authority contained in Part 6.7 (commencing with Section 11901) of Division 2 of the Revenue and Taxation Code of the State of California" (Documentary Transfer Tax Act). (S.F. Bus. & Tax Regs. Code, § 1101.)

Section 11911 also authorizes a county the right to impose a documentary transfer tax. (§ 11911, subd. (a).) Section 11911 contains language substantially identical to that in the ordinance: "The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at [a specified rate]." (§ 11911, subd. (a).)

The parties do not dispute any material facts but disagree on whether the phrase "realty sold" in the ordinance includes the existing leasehold interest

of CVS at the time of the 2015 sale.  This is a matter of statutory interpretation, which we review de novo.  (*McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 553.)  As with any statute, "our primary task is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]  The Legislature's language is the best indicator of its intent.  [Citation.]  The words of the statute 'must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must, to the extent possible, be harmonized.' [Citation.]  As to tax statutes, courts 'may not extend their provisions, by implication, beyond the clear import of the language used,' and a statute whose language is unclear should be construed to favor the taxpayer.  [Citation.]" (*926 North Ardmore Ave., LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328 (*926 North Ardmore*).)

## II.   The Trial Court Correctly Concluded 731 Market Was Entitled to a Partial Refund of the Documentary Transfer Tax It Paid

San Francisco contends the trial court misinterpreted the term "realty sold" in the ordinance as excluding the 2015 transfer of 731 Market's leasehold interest.  We disagree.

### A. Applicable Law

The ordinance does not define "realty sold" but states that "for the purposes of this ordinance, the determination of what constitutes 'realty' shall be determined by the definition or scope of that term under state law."  (S.F. Bus. & Tax Regs. Code, § 1114, subd. (a).)  Because the ordinance was adopted pursuant to authority in Revenue and Taxation Code section 11911 (S.F. Bus. & Tax Regs. Code, § 1101) and employs provisions nearly identical to Revenue and Taxation Code section 11911 (S.F. Bus. & Tax Regs. Code,

6

§ 1101), we conclude the "state law" that guides our construction of the ordinance is Revenue and Taxation Code section 11911 and cases interpreting it. (See *Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 356 ["Where the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise"].) Thus, we can attribute the same meaning of "realty sold" under Revenue and Taxation Code section 11911 to that same phrase in the ordinance.

We turn to several instructive decisions that have interpreted the term "realty sold" in section 11911. In particular, both *Thrifty Corp. v. County of Los Angeles* (1989) 210 Cal.App.3d 881 (*Thrifty*) and *McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612 (*McDonald's*) stand for the proposition that because "realty sold" is sufficiently similar to the phrase "change in ownership" contained in the same code and governing the analogous subject of reassessing property for property tax purposes (see §§ 60, 61 & 62), courts can look to the definitions of "change in ownership" set forth in the property tax provisions to determine whether a particular type of transaction qualifies as "realty sold."

Specifically, in *Thrifty*, *supra*, 210 Cal.App.3d 881, Thrifty Corporation (Thrifty) filed an action for refund of a documentary transfer tax and for declaratory relief due to a county's and city's insistence that it pay a documentary transfer tax growing out of Thrifty's having leased a parcel of property for 20 years with an option to renew for an additional 10 years. (*Id.* at p. 883.) The trial court concluded the tax did not apply to the lease. (*Ibid.*) The court of appeal affirmed. (*Id.* at pp. 883–884, 886.)

The court first looked to Revenue and Taxation Code section 11911's legislative history and explained that "[b]ecause section 11911 was patterned after the [Federal Stamp Act, former 26 U.S.C. §§ 4361, 4363] and employs virtually identical language as that act, we must infer that the Legislature intended to perpetuate the federal administrative interpretations of that federal act." (*Thrifty*, *supra*, 210 Cal.App.3d at p. 884.) The regulations interpreting the former federal act provided that " '[o]rdinary leases of real property for a definite term of years' " were generally not subject to a transfer tax. (*Id.* at pp. 884–885.) However, the regulations explained that leases " 'enduring for a fixed period of years but which, either by reason of the length of the term or the grant of a right to extend the term by renewal or otherwise, consist of a bundle of rights approximating' . . . an interest such as an estate in fee simple" were subject to the tax. (*Ibid.*) The court therefore held that leases "of sufficient longevity . . . to approximate an ' "ownership" right rather than a mere "temporary right of possession" ' " were taxable. (*Id.* at pp. 883–884, 885.)

To determine whether the lease in *Thrifty* was "of sufficient longevity," the court turned to section 61, which defines a " 'change in ownership' " for property tax purposes to include " '[t]he creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options), . . .' " (*Thrifty*, *supra*, 210 Cal.App.3d at p. 885.)[3] The court held, "While the Document[ary] Transfer Tax Act does not define 'realty sold' that phrase is sufficiently similar to the phrase 'change in ownership' contained in the same code and governing an analogous subject, to warrant that each

_____

[3] " ' "Thirty-five years was felt to be the length of term generally required for lease financing by institutional lenders and, therefore, approximately equivalent to the fee . . . ." [Citation.]' " (*Thrifty*, *supra*, 210 Cal.App.3d at pp. 885–886.)

8

phrase be defined to have the same meaning." (*Id.* at p. 886.) Based on that construction, the court concluded the lease "was not of sufficient longevity to constitute 'realty sold' under section 11911." (*Ibid.*)

Later, in *McDonald's, supra,* 63 Cal.App.4th 612, this court addressed the question of how the 35-year period should be calculated for purposes of the documentary transfer tax when an existing lease was extended. (*Id.* at p. 616.) McDonald's Corporation (McDonald's) had a lease with an original term of 36 years. (*Ibid.*) It extended its lease, and the remaining term of the lease was 28 years (13 under the original lease and 15 under the amendment). (*Ibid.*) "If only the prospectively available term of the lease is included, as the trial court found, McDonald's lease would not be subject to the tax; if the entire length of the lease, past and present, is included, as the County contends, the tax would apply." (*Ibid.*) This court upheld the trial court's decision to calculate only the prospectively available term of the lease, not the entire length of the lease. (*Id.* at p. 617.) Accordingly, since the remaining lease term was less than 35 years, McDonald's was not considered the " 'owner' " of the property for tax purposes, and the property therefore was not subject to the tax. (*Ibid.*)

**B. Analysis**

We agree with the reasoning employed by *Thrifty* and *McDonald's* that because section 11911 (and the ordinance, which, as noted above, is adopted from section 11911) does not directly address whether a particular type of transaction qualifies as "realty sold," we may look to the definitions of "change in ownership" set forth in the property tax provisions. (Accord *926 North Ardmore, supra,* 3 Cal.5th at pp. 335, 337 [adopting the approach in *Thrifty,* the Supreme Court held that a transfer tax may be imposed whenever a transfer of an interest in a corporation, partnership or LLC

9

results in a "change in ownership" of the underlying property within the meaning of § 64, subds. (c) & (d)]; see *ibid.* ["[W]e conclude that the critical factor in determining whether the documentary transfer tax may be imposed is whether there was a sale that resulted in a transfer of beneficial ownership of real property. The change in ownership rules, though enacted after the [Documentary] Transfer Tax Act, fit squarely into this framework"]; 11 Witkin, Summary of Cal. Law (11th ed. 2019) § 330(4) ["Although [section] 11911 does not define 'realty sold,' that phrase is sufficiently similar to the phrase 'change in ownership,' used in the Revenue [and Taxation] Code and governing the analogous subject of property taxation, to warrant that each phrase be defined to have the same meaning"].)

We apply these principles to the two relevant transactions in this case. In the first transaction, in 2011, 731 Market created a lease for a parcel of the property to CVS for a total of 45 years. Applying the reasoning in *Thrifty* and its progeny, we find that the 2011 creation of the lease of more than 35 years was a "change in ownership" under section 61, subdivision (c) and therefore constituted "realty sold" to trigger taxation under section 11911. The parties do not dispute the validity of the transfer tax imposed on the first transaction or that the tax was paid.

In the second transaction, in 2015, 731 Market sold and transferred the property subject to the lease, which had a remaining term of more than 35 years. The property law statute provides that, unlike the *creation* of a lease of more than 35 years, a *transfer* of property subject to a lease with a remaining term of more than 35 years is *not* a "change in ownership." (See § 61, subd. (c)(1)(D) [change of ownership includes "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with a remaining term . . . of less than 35 years]; § 62, subd. (g) [listing as exclusion to change of

10

ownership "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with a remaining term . . . of 35 years or more"].) The rationale behind this statutory exclusion is that "[b]ecause the tenant with a remaining term of 35 years or more (including options) is deemed to hold the equivalent of the fee interest, a transfer by the landlord of its reversionary interest in property does not constitute a reassessable change in ownership because the landlord's reversionary interest is not considered equivalent to a fee interest." (Ground Lease Practice (Cont.Ed.Bar 2d ed. 2018) § 2.30.) Consistent with this reasoning, the Supreme Court in *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155 explained: "The Legislature's determination that a change in the lessor under these circumstances will not work a change in ownership is consonant with the concern of the task force report drafters that a transaction should not trigger reassessment unless it transfers the interest of the party carrying the primary economic weight of the property." (*Id.* at p. 168.) The court further noted that "[t]he mischief a contrary rule could create is evident: for example, a rule permitting reassessment whenever the fee changed hands in land subject to a lease with a remaining term of 35 years could result in an enormous tax increase for a lessee that has erected major capital improvements on the land and whose lease requires the lessee to pay property taxes. The increase could occur merely because the lessor has sold that interest to a third party—a transfer over which the lessee has no control." (*Ibid.*)

In applying these principles, we conclude that the 2015 sale of the underlying property subject to CVS's lease did not result in a change in ownership and therefore did not constitute "realty sold" to trigger the transfer tax. At the time of the 2015 transaction, CVS maintained all the same rights under the

11

original lease, which had a remaining term of more than 35 years. Thus, the "primary economic value of land encumbered by a lease" (*Pacific Southwest Realty Co. v. County of Los Angeles*, *supra*, 1 Cal.4th at p. 168) and "beneficial ownership" (*926 North Ardmore*, *supra*, 3 Cal.5th at p. 337) stayed with CVS. Because CVS's primary ownership interest in the leasehold never changed hands up to and including the time of the 2015 transaction, there was no "realty sold" under the ordinance and as interpreted under section 11911 and case law. (See *Thrifty*, *supra*, 210 Cal.App.3d at p. 886; *McDonald's*, *supra*, 63 Cal.App.4th at pp. 615–617.) It follows that the existing leasehold interest of the 2015 transaction was not subject to the transfer tax under the ordinance in question. (See *Thrifty*, at p. 886.)

Accordingly, the trial court correctly determined that 731 Market was entitled to a refund of the amount paid attributable to the value of the leasehold. Further, we find that the court's interpretation of the ordinance comports with the well-settled principle of statutory construction that "to the extent there is any doubt whether the [transfer of the property subject to CVS's lease] is subject to a documentary transfer tax," we " ' "construe[] [the ordinance] most strongly against the government and in favor of the taxpayer." ' [Citations.]" (*McDonald's*, *supra*, 63 Cal.App.4th at p. 617.) San Francisco launches several counterarguments, none of which we find persuasive.

First, San Francisco argues the trial court's reliance on *Thrifty* and *McDonald's* is misplaced because they apply property tax law, which serves different purposes than the transfer tax law. According to San Francisco, the Legislature developed the change in ownership provisions for property tax purposes " 'to avoid such unwarranted complexity by identifying the primary owner, so that only a transfer by him will be a change in ownership.'

12

(*Dyanlyn Two v. County of Orange* (2015) 234 Cal.App.4th 800, 810 [citation].)" San Francisco claims transfer tax law, by contrast, is concerned only with transfers of " 'realty' [citation] such that it is neither necessary nor consistent with the purposes of the tax to determine the primary 'owner,' or to limit the tax to a single type of interest in the realty." This contention is unavailing.

San Francisco does not identify, nor do we perceive, any conflicting intent from the plain language of the "change in ownership" provisions under property tax law (Rev. & Tax. Code, § 60 et seq.) and the transfer tax ordinance (S.F. Bus. & Tax Regs. Code, § 1101 et seq.) (or Revenue and Taxation Code section 11911's documentary transfer tax). In fact, the ordinance provides that the change in ownership provisions should be applied when determining if transfers of ownership interests in legal entities are subject to the transfer tax. (See S.F. Bus. & Tax Regs. Code, § 1114, subd. (b) [" '[R]ealty sold' includes any acquisition or transfer of ownership interests in a legal entity that would be a change of ownership of real property under California Revenue and Taxation Code Section 64"].) Therefore, the ordinance's incorporation of the change of ownership provisions undermines San Francisco's arguments against the application of *Thrifty* and *McDonald's*.

We also reject San Francisco's contention that *Thrifty* and *McDonald's* are distinguishable because they addressed the transfer of a *lessee's* interest, not a *lessor's* interest, the relevant focus of analysis here. According to San Francisco, 731 Market, as lessor, retained a right to receive rent and a future reversionary interest under the lease. Those rights, San Francisco contends, are distinguishable from a lessee's interest; separately constitute " 'realty' "

13

under Civil Code sections 761, 762, 821, 1044, and 1046; and were thus taxable under the ordinance. These contentions are unavailing.

The Civil Code sections cited by San Francisco are inapposite because they refer to general property concepts and do not address the documentary transfer tax or even mention the phrase "realty." (See Civ. Code, §§ 761 [lists various estates in real property], 762 [defines an estate in fee simple], 821 [provides that a grantee of rent or a reversion interest is entitled to the same remedies as the grantor might have had], 1044 [specifies the type of property which may be transferred], 1046 [provides that a right of reentry may be transferred].)

*Blackledge v. McIntosh* (1927) 85 Cal.App. 475 and *Callahan v. Martin* (1935) 3 Cal.2d 110 also do not assist San Francisco's position. San Francisco relies on *Callahan* for the proposition "[t]hat the right to receive future rents . . . is . . . an interest in land" to argue that 731 Market's right to receive rental payments under the lease was " 'realty' " and thus taxable under the ordinance. (*Callahan*, at p. 124.) Such reliance is misplaced. *Callahan* did not mention taxation much less analyze the term "realty" as it relates to taxation. *Blackledge* is also unilluminating as it discussed the validity of the delivery of a deed, a question that does not remotely apply here.

San Francisco also relies on section 1108.3 of the San Francisco Business and Tax Regulations Code to argue that a lessor's leasehold interest for a term of over 35 years is a conveyance of " 'realty' " subject to the transfer tax. We disagree. Section 1108.3 provides: "Any tax imposed pursuant to this ordinance shall not apply with respect to any deed, instrument or writing which creates, terminates, or transfers a leasehold interest having a remaining term (including renewal options) of *less than* 35 years." (Italics added.) This exception does not apply because it does not address the

14

situation presented here: the transfer of property subject to an existing lease with a remaining term of *more than* 35 years. (See *Bullis v. Security Pacific Nat. Bank* (1978) 21 Cal.3d 801, 813, fn. 13 [It is a " 'rule of statutory construction that an express exception is not to be extended beyond the fair import of its terms' "].) Thus, the authorities San Francisco cites do not establish that the transfer of a lessor's interest encumbered by a 35-plus-year lease is subject to the transfer tax.

In any event, we find that San Francisco's proposed interpretation of the ordinance is unreasonable and would produce absurd results. (See *E. Gottschalk & Co. v. County of Merced* (1987) 196 Cal.App.3d 1378*,* 1382–1383 [" '[S]tatutes must receive practical, common sense construction . . . and . . . an interpretation which would lead to an unreasonable result or absurdity must be avoided"].) San Francisco makes an artificial distinction between a lessor's interest and a lessee's interest in a lease, without analyzing the substance of each of those parties' rights under the lease for taxation purposes. (See *Shuwa Investment Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1648 [it is a "general tax principle" that "the incidence of taxation depends upon the substance of a transaction rather than its form"].) The mischief that San Francisco's interpretation would create was illustrated by the trial court using the following hypothetical: "By the City's logic, a building sale could be taxed on one day based on a valuation that included the present value of a leaseable space—say $286,922—and then taxed another $268,922 [*sic*] the next day when the building owner actually leased out that space. The City would thus tax the same income stream twice in two days. [Fn. omitted.]" San Francisco conceded that the court's "hypothetical is correct . . . ." We agree that such an

15

approach would indeed elevate form over substance and produce an absurd result.

Finally, San Francisco contends the trial court erred in failing to recognize that San Francisco, as a charter city, is permitted to enact and administer a local transfer tax that differs from or conflicts with Revenue and Taxation Code section 11911. (See Cal. Const., art. XI, §§ 3–4 [defining city and county charters] & 5, subd. (a) [sets out general principles of self-governance and provides, "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith"].) This so-called "home rule" provision under the California Constitution establishes that " 'so far as "municipal affairs" are concerned,' charter cities are 'supreme and beyond the reach of legislative enactment.' [Citation.]" (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 12; accord, *Johnson v. Bradley* (1992) 4 Cal.4th 389, 397.) San Francisco, however, mistakenly assumes that the ordinance and state law conflict. Specifically, it notes that the ordinance imposes a tax "when the consideration or value of the interest or property conveyed (*not excluding* the value of any lien or encumbrances remaining thereon at the time of sale) . . . exceeds $100 . . . ." (S.F. Bus. & Tax Regs. Code, § 1102, italics added.) Revenue and Taxation Code section 11911 imposes the tax "*exclusive of* the value of any lien or encumbrance . . . ." (Rev. & Tax. Code, § 11911, subd. (a), italics added.) San Francisco, however, does not establish that these differences in calculating consideration before

16

taxation is triggered present a " 'genuine conflict' " between the local ordinance and state law to invoke the municipal home rule. (*Johnson*, at p. 399.)  By its own terms, the ordinance was adopted from the Documentary Transfer Tax Act (S.F. Bus. & Tax Regs. Code, § 1101), employs nearly identical language (*id.*, § 1102), and defers to state law's definition of "realty" (*id.*, § 1114).  Thus, San Francisco's reliance on the home rule to impose the ordinance's transfer tax is misplaced.

In sum, we conclude that the trial court correctly determined that the ordinance excludes the 2015 transfer of the underlying property subject to CVS's long-term lease.

## DISPOSITION

The judgment is affirmed.  731 Market is entitled to its costs on appeal.

17

_____

Jackson, J.


WE CONCUR:


_____

Siggins, P. J.


_____

Fujisaki, J.


A154369/*731 Market Street Owner, LLC v. S.F.*


18

A154369/731 Market Street Owner, LLC v. S.F.

Trial Court:        Superior Court of the City and County of San Francisco

Trial Judge:        Richard B. Ulmer, Jr., J.

Counsel:            Dennis J. Herrera, City Attorney, Scott M. Reiber, Chief Tax Attorney, Thomas S. Lakritz and Moe Jamil, Deputy City Attorneys, for Defendant and Appellant.

                    Farella Braun + Martel and James W. Morando for Plaintiff and Respondent.