Filed 5/9/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EQUINIX LLC et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B324243<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV35469) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.
        Law Offices of Stephen M. Harris, Stephen M. Harris; Gangloff & Gangloff, Ronald Gangloff and David L. Gangloff, Jr. for Plaintiffs and Appellants.
        Dawyn R. Harrison, County Counsel, and Drew M. Taylor, Deputy County Counsel, for Defendant and Respondent.

_____

# INTRODUCTION

As a result of the 1978 voter initiative commonly known as Proposition 13, the government can reassess the value of real property for taxation purposes after a "change in ownership" of the property.  Under the statutes implementing Proposition 13, whether the transfer of a lessor's interest in taxable real property results in a change in ownership generally depends on the length of the remaining lease term at the time of the transfer.  If the remaining term of the lease is less than 35 years, then for purposes of Proposition 13 there is a change in ownership.  (Rev. & Tax. Code,[1] § 61, subd. (c)(1)(D) (61(c)(1)(D)).)  If the remaining term of the lease at the time of the transfer is 35 years or more, then for Proposition 13 purposes there is no change in ownership because of the lessee's long-term interest in the property.  (§ 62, subd. (g).)[2]

In 2015, appellant GPT Maple Avenue Owner, LP (GPT) purchased a property subject to a lease to appellant Equinix, LLC (Equinix); at the time of GPT's acquisition, the remaining term of the lease was 26 years.  The Los Angeles County Assessor's Office (Assessor) determined, pursuant to section 61(c)(1)(D), that GPT's acquisition resulted in a "change in ownership" permitting reassessment for property tax purposes because, at the time of the sale, the remaining term of the lease was under 35 years.

---

[1] Unspecified statutory references are to the Revenue and Taxation Code.

[2] Under both of these statutes, the lease term is calculated by including renewal options.  Unless otherwise stated, our references to the length of a lease term will include renewal options.

Having found a change in ownership, the Assessor reassessed the property at its then current 2015 market value, which meaningfully increased the tax payable on the property.

Both appellants now challenge the Assessor's change in ownership determination and resulting property tax reassessment. They do not claim that the language of section 61(c)(1)(D) is ambiguous when applied to the facts in this case, and concede that the section's plain language deems the 2015 transaction to be a change in ownership permitting reassessment. They instead contend that section 61(c)(1)(D) is invalid for various reasons, including that it is inconsistent with Proposition 13 and another section in the statutory scheme, section 60. We find no merit to appellants' arguments and affirm the trial court's rejection of the challenge to the reassessment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Summary

The facts are undisputed, and largely based on a stipulation between the parties.

The real property subject to taxation is located on East Maple Avenue in El Segundo (the Property). The Property has been used as a data center since about 2000; the building is approximately 106,160 square feet, situated on 173,804 square feet of land.

Although only the 2015 sale of the Property is at issue with regard to the property tax reassessment, for context we set forth certain earlier transactions involving the Property leading up to the 2015 sale. Equinix purchased the Property in September 2005. In December 2005, Equinix sold the Property to iStar Financial Inc. (iStar) and then leased it back from iStar for an initial term of 20 years with three 5-year options. The Assessor

3

deemed both the sale and the lease to be changes in ownership under section 60. Under the lease Equinix was responsible for payment of property taxes due during the lease.

In 2010, iStar sold its interest in the Property to TRT NOIP Maple El Segundo LP (TRT). The Assessor deemed this transaction to be a change in ownership.

On March 11, 2015, TRT sold its interest in the Property to GPT. The Assessor determined that this was a change in ownership and reassessed the value of the Property.

## B.     The Assessment Appeals Board Denies a Challenge to the Assessor's Determination

Equinix appealed the Assessor's 2015 change in ownership determination to the Los Angeles County Assessment Appeals Board. The appeals board found in favor of the county, concluding that TRT's sale of the Property to GPT resulted in a change in ownership under sections 60 and 61(c)(1)(D).

On February 6, 2020, Equinix and GPT presented a refund claim to the county, which the county denied on April 1, 2020.

## C.     Equinix and GPT Sue, and the Trial Court Rules in Favor of the County

Equinix and GPT filed this action on September 16, 2020. Based on stipulated facts, legal briefs, and oral arguments, the trial court issued a final statement of decision on June 28, 2022. The court concluded that, under the "express language" of sections 61(c)(1)(D) and 62, subdivision (g), TRT's sale of the Property to GPT in March 2015 resulted in a change in ownership because at the time of sale the remaining term of Equinix's lease was less than 35 years.

After the court entered judgment, Equinix and GPT timely appealed.

4

## DISCUSSION

### A.    Standard of Review

"What constitutes a 'change in ownership' is a question of law subject to this court's independent de novo judicial review. [Citation.]"  (*Shuwa Investments Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1644.)

### B.    Proposition 13 and the Implementing Statutes

Under Proposition 13, as set forth in article XIII A of the California Constitution, the value of real property used for tax purposes is defined as "the county assessor's valuation of real property as shown on the 1975-76 tax bill . . . or, thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment."  (Cal. Const., art. XIII A, § 2, subd. (a); see *Auerbach v. Assessment Appeals Bd. No. 1* (2006) 39 Cal.4th 153, 157 [Proposition 13 "limits the amount that the assessed value of real property may be increased to reflect increases in the property's actual market value," but a "property may be reassessed at its current market value" upon a change in ownership] (*Auerbach*).)[3]

"Proposition 13 did not itself define 'change in ownership,' so it fell to the Legislature to do so.  A broad-based 35-member task force studied the matter" and, on January 22, 1979, submitted to the Assembly Committee on Revenue and Taxation its Report of the Task Force on Property Tax Administration (task force report).  (*Auerbach, supra,* 39 Cal.4th at pp. 160-161.)

---

[3] In addition, the value can be increased to account for inflation at a rate not exceeding 2 percent per annum.  (Cal. Const., art. XIII A, § 2, subd. (b).)

This report included proposed statutory language, which the Legislature adopted with some modifications. (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 161 (*Pacific Southwest Realty Co.*).) For purposes of this appeal, the key sections of the statutory scheme are sections 60, 61, and 62.

Section 60 sets forth a general test: "A 'change in ownership' means a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." (§ 60.) "Because the Legislature, in enacting section 60, adopted its language verbatim after reviewing the task force report, it is evident that the Legislature intended for section 60 to contain the overarching definition of a 'change in ownership' for reassessment purposes." (*Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 162.)

Section 61 identifies several specific transactions deemed to be a "change in ownership," while, conversely, section 62 identifies several specific situations deemed not to be a "change in ownership." (§§ 61, 62.) The task force report characterized what would become sections 61 and 62 as " 'statutory "examples" to elaborate on common transactions. Lay assessors and taxpayers would otherwise have difficulty applying legal concepts such as "beneficial use" and "substantially equivalent." Thus, common types of transfers were identified and concrete rules for them were set forth in proposed [s]ections 61 and 62.' " (*Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 161, quoting task force report, p. 40.)

Under section 61, subdivision (c)(1)(A), "[t]he creation of a leasehold interest in taxable real property for a term of 35 years or more" effects a change in ownership. As explained by our

6

Supreme Court, "the Legislature decided, following the task force's recommendation, that the creation of a 35-year lease would achieve a change in ownership (§ 61, subd. (c)(1)) because the length of the lease would give the lessee's interest some of the practical attributes of a conveyance of fee simple." (*Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 165.) The termination of a leasehold interest with an original term of 35 years or more is also a change in ownership, as is a "transfer of a leasehold interest having a remaining term of 35 years or more." (§ 61, subd. (c)(1)(B)&(C).)

Under section 61(c)(1)(D), "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with a remaining term . . . of less than 35 years" is a "change in ownership, as defined in [s]ection 60." Conversely, under section 62, subdivision (g), "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with a remaining term . . . of 35 years or more" is not a "change in ownership."

## C.      Principles of Statutory Construction

" 'It is blackletter law that the Constitution and statutes must receive practical, common sense construction [citation] and that an interpretation which would lead to an unreasonable result or absurdity must be avoided.' [Citation.]" (*E. Gottschalk & Co. v. County of Merced* (1987) 196 Cal.App.3d 1378, 1382-1383.) "The plain meaning of words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' [Citation.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.)

"Statutory language susceptible to more than one reasonable interpretation is regarded as ambiguous—that is, it

7

has no plain meaning.  [Citation.]  Whether statutory language is ambiguous is a question of law subject to an independent determination on appeal.  [Citation.]

"When statutory language is susceptible to more than one reasonable interpretation, courts must (1) select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute and (2) avoid an interpretation that would lead to absurd consequences.  [Citation.]  The apparent intent of the Legislature is determined by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation.  [Citation.]  Stated another way, the ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.  [Citation.]  In addition, courts determine the apparent intent underlying ambiguous statutory language by evaluating a variety of extrinsic aids, including the ostensible objects to be achieved by the statute, the evils to be remedied, public policy, and the statute's legislative history. [Citation.]" (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 925.)

Lastly, " 'in case of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer.' [Citation.]" (*E. Gottschalk & Co. v. County of Merced, supra*, 196 Cal.App.3d at p. 1383.)

## D.    There Was a Change in Ownership Under the Express Terms of Section 61(c)(1)(D)

Under the unambiguous language of section 61(c)(1)(D) the 2015 transaction is a change in ownership permitting reassessment.  TRT, the owner and lessor of the Property, sold all

8

of its interest in the Property to GPT, and GPT took title subject to the Equinix lease, which had a remaining term under 35 years. Indeed, appellants do not argue that section 61(c)(1)(D) is ambiguous, nor do they offer a reasonable interpretation under which the language of section 61(c)(1)(D) does not dictate that GPT's acquisition was a change in ownership.

Appellants instead contend that we should ignore the plain language of section 61(c)(1)(D) for various reasons. As we discuss below, we disagree.

1. *Section 61(c)(1)(D) Is Not Inconsistent with Proposition 13 or Section 61, Subdivision (c)(1)(A)*

Appellants first contend that section 61(c)(1)(D) is unconstitutional because it conflicts with the intent of the voters when enacting Proposition 13. Specifically, relying on the Legislative Analyst's analysis provided to voters with the Proposition 13 ballot, appellants argue that the voters intended there could be no reassessment of value "as long as the same taxpayer continued to own the property."[4] (Italics omitted.)

Appellants base their argument that section 61(c)(1)(D) conflicts with Proposition 13 partly on Proposition 13 and partly on one of Proposition 13's implementing statutes. Appellants contend that pursuant to section 61, subdivision (c)(1)(A), Equinix became the "primary owner" of the Property when it

---

[4] The Legislative Analyst's analysis states, in relevant part, "Initially this measure would [generally] roll back the current assessed values of real property to the values shown on the 1975-76 assessment roll. . . .  The adjusted values could then be increased by no more than 2 percent per year *as long as the same taxpayer continued to own the property*." (Ballot Pamp., Primary Elec. (June 6, 1978) analysis of Prop. 13, p. 57, italics added.)

9

initially entered the long-term lease with iStar in December 2005.  Appellants assert that only a primary owner can transfer primary ownership.  Because Equinix was the primary owner before the 2015 transaction between TRT and GPT, and Equinix did not transfer any of its leasehold interest as part of that transaction, appellants conclude Equinix remained the primary owner after the 2015 transaction and there was no change in ownership for tax purposes.

We are not persuaded.  Although the lease initially provided Equinix in December 2005 with an interest in the Property deemed under the statute to be substantially equivalent to ownership of the fee, there is no support for appellants' contention that Equinix retained that interest throughout the lease despite the sale of the Property's fee title to GPT.  Although appellants urge us to look at who was the "primary owner," the statutory scheme more precisely focuses on whether the transaction at issue transfers the primary ownership interest. (E.g., *Dyanlyn Two v. County of Orange* (2015) 234 Cal.App.4th 800, 822, citing *Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 168.)  Under section 60, a change in ownership occurs when there has been "a transfer" that satisfies three criteria, including that the interest which is transferred has a "value . . . substantially equal to the value of the fee interest."  (§ 60; see *Pacific Southwest Realty Co.*, *supra*, at p. 167 ["the drafters and the Legislature intended to find a change in ownership when the primary economic value of the land is transferred from one person or entity to another"].)[5]

---

[5] As discussed further below, the two other criteria set forth in section 60 are a transfer of a present interest in real

As used in Proposition 13, "[t]he term 'change of ownership' is not so clear and concise that it is not subject to further construction" by the Legislature, and "sections 60 and 61, subdivision (c)(1), are reasonable interpretations of this term." (*E. Gottschalk & Co. v. County of Merced*, *supra*, 196 Cal.App.3d at p. 1386.) In enacting section 61, subdivision (c)(1)(A), the Legislature determined that creation of a sufficiently long-term lease results in a change in ownership because of the interest the long-term lease confers to the lessee. To implement that decision, it dictated that leases with a term of 35 years or more result in a change in ownership because "[a] lease of such duration will constitute the main economic value of the land" (*Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 165) such that the creation of such a lease transfers to the lessee an interest "substantially equal to the value of the fee interest." (§ 60.) The Legislature had to choose some time period as the dividing line for this long-term lease concept, and "the term of 35 years chosen by the Legislature is not an arbitrary or unreasonable figure." (*E. Gottschalk & Co. v. County of Merced*, *supra*, 196 Cal.App.3d at p. 1385.)

Under section 61, subdivision (c)(1)(A), Equinix acquired an interest in the Property substantially equal to the value of the fee interest when it entered the lease with iStar in December 2005. However, when GPT acquired the Property more than nine years later, in March 2015, the lease term had decreased to below 26 years. At that time, Equinix's leasehold interest was no longer

property, and that the transfer include the beneficial use of that present interest. (§ 60; *Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 162.)

11

substantially equal to the value of the fee interest, and therefore GPT acquired value substantially equal to the fee interest upon its purchase of the Property, constituting a change in ownership. Nothing in the statutory scheme suggests that Equinix continued to hold an interest in the Property substantially equal to the value of the fee interest at the time of the 2015 sale when its lease term had fallen below 35 years. To the contrary, by enacting section 61(c)(1)(D), the Legislature rejected such an approach, deeming that where the remaining term on a lease is less than 35 years at the time of a sale like the 2015 transaction, the lessor's, not the lessee's, interest in the property is substantially equivalent to the fee.[6]

Finally, we find appellants' reliance on *Dyanlyn Two v. County of Orange*, *supra*, 234 Cal.App.4th 800 misplaced. That case addresses the effect of a lease *extension* where the lease originally had a term of more than 35 years, the term fell below

---

[6] We do not suggest that, when the term of a lease which was originally 35 years or more falls below the 35-year mark without anything more occurring beyond the passage of time since creation of the lease, a "transfer" within the meaning of section 60 has occurred which triggers a change in ownership and reassessment without a sale of the lessor's interest. " '[A]lthough the value equivalence shifts from the lessee to the lessor [by the passage of time], there is no change in ownership' " under the applicable statutes based only on that passage of time. (*Dyanlyn Two v. County of Orange*, *supra*, 234 Cal.App.4th at p. 817.) Instead, there must be a separate triggering sale or other transfer once the lease falls below 35 years. In the absence of such a triggering event, the Legislature made clear that a change in ownership will not result until the lease terminates. (§ 61, subd. (c)(1)(B).)

35 years, and an extension caused the lease to again exceed 35 years. (*Id*. at pp. 804-805.) The court found that both the lease extension as well as a sale from the lessor to the lessee at a time when the lease term exceeded 35 years did not constitute a change in ownership for purposes of Proposition 13 because the lessee remained the primary economic owner before and after the transactions. (*Id*. at pp. 817-823; see also § 62, subd. (g) [change in ownership does not include any transfer of a lessor's interest in taxable real property subject to a lease with a remaining term of 35 years or more].) *Dyanlyn Two* says nothing about the facts presented here in which the remaining lease term was less than 35 years at the time of the sale, and the sale was not to the lessee but a third party. Indeed, the *Dyanlyn Two* court noted that facts such as the ones present here would compel a different result: " '[T]he lessee remains the owner for property tax purposes . . . unless and until . . . *the lessor otherwise transfers its underlying fee interest in the property*.' " (*Dyanlyn Two v. County of Orange*, *supra*, at p. 814, italics added.)

2. *Section 61(c)(1)(D) Is Not Inconsistent with Section 60*

Appellants next contend that we should not apply section 61(c)(1)(D) because it is inconsistent with section 60. We disagree.

We begin by rejecting appellants' contention that sections 61 and 62, and specifically section 61(c)(1)(D), are in the words of appellants "subordinate to the overarching rules set forth in [s]ection 60" and that under *Pacific Southwest Realty Co.* and *Auerbach* section 60 "prevails over the examples given in [s]ections 61 and 62." This contention does not comport with applicable principles of statutory interpretation. As our Supreme Court held in *Pacific Southwest Realty Co.*, in interpreting

13

sections 60, 61 and 62, "Two rules of statutory construction guide our inquiry.  We look to the plain language of the statute.  [Citation.]  And because sections 60, 61 and 62 are in pari materia, we strive to interpret them in a manner that gives effect to each yet does not lead to disharmony with the other two." (*Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 167; see *Auerbach*, *supra*, 39 Cal.4th at p. 165, fn. 4 ["The examples found in [§§] 61 and 62 must be interpreted in light of th[e] definition [of change in ownership in § 60]"].)  While we must interpret sections 61 and 62 to be consistent with section 60, we cannot simply read provisions of sections 61 or 62 out of the statutory scheme because that "would contravene [a] basic rule of statutory construction: insofar as possible, we must harmonize code sections relating to the same subject matter and avoid interpretations that render related provisions nugatory."[7] (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1325 [rejecting a construction of § 60 which would have "largely negat[ed] [§] 61, [subd.] (h)"].)

Applying these rules, concluding that the 2015 transaction changed ownership under section 61(c)(1)(D) is consistent with section 60.  As noted above, under section 60 a " 'change in ownership' " occurs upon "a transfer of a present interest in real property, including the beneficial use thereof, the value of which

---

[7] Appellants argue that the task force "made clear that in any dispute between the primacy of [s]ection 60, and the examples [in sections 61 and 62], [s]ection 60 would control." However, our task here is to follow the rules of statutory interpretation to give effect to the will of the voters and the intent of the Legislature, not the approach or intent of the task force.

14

is substantially equal to the value of the fee interest." (§ 60.) Under this test, GPT's acquisition of the Property in 2015 resulted in a change in ownership: (1) a present interest in the Property was transferred to GPT, (2) that transfer included the beneficial use of the Property as GPT substituted in as lessor (e.g., *Auerbach, supra*, 39 Cal.4th at p. 163 ["The receipt of rent for leased property may constitute beneficial use because it represents enjoyment of the value of the property"]), and (3) the value of the present interest transferred to GPT was substantially equal to the value of the fee interest because Equinix's remaining lease term was less than 35 years.

*Pacific Southwest Realty Co.* supports this conclusion. At issue in that case was whether a change in ownership occurred when a purchaser acquired a fee simple interest in an office building complex but agreed, as a condition of the transaction, to lease back the two office towers on the property to the seller. (*Pacific Southwest Realty Co.*, *supra*, 1 Cal.4th at p. 159.) The court held that this sale/leaseback transaction was a change in ownership under section 60. (*Pacific Southwest Realty Co.*, *supra*, at pp. 162-165.) It first explained that there was a transfer of a "present interest" in the property because the purchaser obtained a fee simple estate. (*Id*. at pp. 162-163.) It then reasoned that the purchaser obtained a "beneficial interest" in the property, which it chose to "exercise . . . by exacting rent from [the seller/lessee]." (*Id*. at p. 164.) Lastly, the court concluded that the purchaser acquired an interest "identical" in value to the fee interest because the transaction "was a transfer of the fee itself." (*Ibid*.) The same analysis applies to the transaction at issue here, as GPT acquired a fee simple interest in the Property from TRT. (See *Crow Winthrop Operating*

15

*Partnership v. County of Orange* (1992) 10 Cal.App.4th 1848, 1854 [applying *Pacific Southwest Realty Co.* to conclude that purchaser of property subject to a long-term lease obtained an interest "substantially equal to the value of the fee interest"]; see also *Industrial Indemnity Co. v. City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1005 [concluding a sale conditioned on the buyer's agreement to lease back the property to the seller for a 50-year term was a change in ownership under § 60].)

   3. *The Legislature Was Not Required to Adopt the Task Force's Recommendations Without Alteration*

  Appellants point out that, in enacting section 61(c)(1)(D), the Legislature deviated from the task force's recommended statutory language. Specifically, the task force recommended defining "change in ownership" to include "any transfer of a lessor's interest in taxable real property subject to a lease with an *original* term . . . of less than 35 years." (Task force report, p. 49, italics added.) However, in section 61(c)(1)(D), the Legislature used the word "remaining" instead of "original."[8] Appellants

---

  [8] Appellants make no claim that the language in section 61(c)(1)(D) resulted from a drafting error, and the legislative history does not suggest any such error. For example, the Legislature made a parallel change in section 62, subdivision (g): the task force recommended excluding from "[c]hange in ownership" "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with an original term . . . of 35 years or more" (task force report, p. 51), and the Legislature used the word "remaining" instead of "original." The Legislature additionally made other intentional changes to the language proposed by the task force.

16

argue that, by not adopting the language of section 61(c)(1)(D) as recommended by the task force, the Legislature "stripped the logical sense from the [t]ask [f]orce's recommendations."

We reject this argument because the Legislature was not required to adhere to the task force's recommendations.[9] Appellants cite no authority to the contrary. Furthermore, the Legislature's alteration of the task force's recommended language did not render section 61(c)(1)(D) illogical. Appellants assert section 61(c)(1)(D) as enacted is illogical because, under the task force's recommended language, a long-term lessee would in effect have control over when a change in ownership occurred during the term of the lease because the initial term of the lease, rather than the remaining term, would govern whether there was a change in ownership and resulting reassessment. But the type of control appellants identify is irrelevant; under the statutory scheme enacted by the Legislature, whether a lessor's sale of property results in a change in ownership does not turn on whether the lessee has that type of control over the transaction. (See *Dyanlyn Two v. County of Orange*, *supra*, 234 Cal.App.4th at p. 816.) Nor is there anything illogical about a scheme under which the lessee can avoid a change in ownership while the lease term remains at or above 35 years, but when the remaining term is less than 35 years a sale by the lessor results in a change in ownership. Indeed, for initial leases of less than 35 years no such control would exist under either the task force's approach or the approach ultimately enacted by the Legislature. This line

---

[9] Neither party identifies any legislative history which definitively discloses the reason for the Legislature's alteration of the task force's recommended language.

17

drawing exercise is ultimately a legislative determination, and appellants offer no basis for us to disturb how the Legislature chose to parse this issue.

Finally, appellants' argument about control ignores that a long-term lessee can negotiate the responsibility for payment of any property tax increase resulting from a change in ownership during the lease. (See, e.g., *Auerbach*, *supra*, 39 Cal.4th at p. 158 [lease required lessee "to pay the real property taxes, but required the lessor to pay any increase in real property taxes due to, or resulting from, the sale of the premises" during the lease].) The lease here afforded Equinix protection from increases in assessed value from any sale by the lessor during the first six years of the lease, but provided that thereafter Equinix was "obligated to pay on a going forward basis any increases in such real property taxes or assessments applicable to the [l]eased [p]remises . . . including such as may have been triggered by any [sale by the lessor]." Equinix's lack of alleged control was thus not something foisted upon it, but rather something for which it bargained.

4. *Section 61, Subdivision (c)(1)(B) Does Not Undermine Section 61(c)(1)(D)*

Appellants lastly point out that, under section 61, subdivision (c)(1)(B), there is a change in ownership upon "[t]he termination of a leasehold interest in taxable real property which had an original term of 35 years or more (including renewal options)." (*Ibid.*) They argue it would be inconsistent with section 60 and the intent of Proposition 13 for there to be a change in ownership both when the lessor transfers its interest at a point when the remaining lease term has fallen below 35 years, and again when the lease terminates.

18

As we have found, application of section 61(c)(1)(D) under the facts of this case is consistent with both section 60 and Proposition 13. Appellants' understandable concern with the later, possible impact of section 61, subdivision (c)(1)(B) if and when the lease terminates is not an issue ripe for decision. (*Consumer Cause, Inc. v. Johnson & Johnson* (2005) 132 Cal.App.4th 1175, 1186 ["In order for a case to be ripe, '[t]he legal issues posed must be framed with sufficient concreteness and immediacy so that the court can render a conclusive and definitive judgment rather than a purely advisory opinion based on hypothetical facts or speculative future events' "].) We accordingly do not decide that issue. We do observe, however, that the rationale for the 2015 transaction effecting a change in ownership is that GPT acquired an interest in the Property substantially equal to the value of the fee interest. (§ 60.) Assuming nothing else changes from the 2015 change in ownership until the expiration of the existing lease term beyond the passage of time, there would be no transfer of value substantially equal to the value of the fee interest at the termination of the lease because GPT now holds that interest and would still hold that interest at the end of the lease. Our holding that the 2015 transaction was a change in ownership under section 61(c)(1)(D) thus necessarily suggests that there would be no change in ownership at the termination of Equinix's leasehold interest in such a circumstance.

## DISPOSITION

The judgment is affirmed.  The County of Los Angeles is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.